UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| RICHARD DIMOTT, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) |
| | ) Docket nos. 2:06-cr-26-GZS & |
| UNITED STATES OF AMERICA, | )            2:16-cv-347-GZS |
| | ) |
| Defendant. | ) |
| | ) |

**ORDER ON MOTION UNDER 28 U.S.C. § 2255**

Before the Court is Dimott's Motion under 28 U.S.C. § 2255 (ECF No. 74 in D. Me. Docket # 2:06-cr-26-GZS). The Government filed its Response opposing the Motion (ECF No. 79) on August 3, 2016. Dimott then filed his Reply (ECF No. 82) on September 8, 2016, and, with permission from the Court, the Government filed its Sur-Reply (ECF No. 85) on September 13, 2016. For the reasons explained herein, the Court now DENIES the Motion.

**I.    PROCEDURAL HISTORY**

On September 10, 2007, the Court sentenced Richard Dimott on two separate pending cases. In District of Maine Docket # 2:06-cr-19-GZS, Dimott was sentenced to six months imprisonment for one count of criminal contempt. In District of Maine Docket # 2:06-cr-26-GZS, Dimott was sentenced to serve a concurrent 150 months of imprisonment on one count of being a felon in possession of a firearm. With respect to this latter charge, Dimott was found to be an armed career criminal under the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e). Specifically, the Court referenced "eight separate counts of burglary" in sentencing Dimott under

ACCA (PSR ¶ 26), which included the following:  (1) a November 30, 1990, Maine Burglary conviction (PSR ¶ 32); (2) a February 28, 1992, Maine Burglary conviction (PSR ¶ 35); (3) a July 9, 1996, Maine Burglary conviction (PSR ¶ 36); (4) a November 8, 1995, Maine Burglary conviction (PSR ¶ 37); (5) a June 16, 2000, Maine Burglary conviction consisting of two separate burglary counts (PSR ¶ 38); (6) and another June 16, 2000, Maine Burglary conviction consisting of two separate burglary counts (PSR ¶ 40).

The Shepard-approved documents provided by the Government in connection with the pending motion provide the following additional information regarding Dimott's Maine burglary convictions:

(1) Dimott's November 30, 1990, Maine Burglary conviction (PSR ¶ 32) was a conviction for a Class C burglary in violation of 17-A M.R.S. § 401 based on his entry to a structure "namely, a place of business . . . located at 255 Congress Street."  (Gov't Ex. 1 (ECF No. 79-1) at Page ID # 521 & 523.)

(2) Dimott's February 28, 1992, Maine Burglary conviction (PSR ¶ 35) was a conviction for Class C burglary in violation of 17-A M.R.S. § 401 based on his entry to a structure "namely, a place of business . . . located on Vaughn Street."  (Gov't Ex. 2 (ECF No. 79-2) at Page ID # 531 & 532.)

(3) Dimott's July 9, 1996, Maine Burglary conviction (PSR ¶ 36) was a conviction for Class C burglary in violation of 17-A M.R.S. § 401 based on his entry to a structure "namely, a place of business . . . located at 35 Union Wharf."  (Gov't Ex. 3 (ECF No. 79-3) at Page ID # 535 & 537.)

(4) Dimott's November 8, 1995, Maine Burglary conviction (PSR ¶ 37) consisted of two counts of Class C burglary in violation of 17-A M.R.S. § 401 based on his entry to two structures:  "a place of business . . . located at 53 York Street" (Count I) and "a place of business . . . located at 30 Danforth Street" (Count II).  (Gov't Ex. 4 (ECF No. 79-4) at Page ID # 545-46 & 548.)

(5) Dimott's June 16, 2000, Maine Burglary conviction (PSR ¶ 38) consisted of two separate burglary counts, which are both listed as Class B crimes in violation of 17-A M.R.S.

   § 401(C).  Count I alleges entry to "a structure, namely an office trailer, operated by Thaxter Company, located at 856 Brighton Avenue." (Gov't Ex. 5 (ECF No. 79-5) at Page ID # 556.)  Count III alleges entry to "a structure, namely The Breakwater School, located at 856 Brighton Avenue." (Gov't Ex. 5 at Page ID # 557.)

(6) Dimott's other June 16, 2000, Maine Burglary conviction (PSR ¶ 40) consisted of two separate burglary counts, which are both listed as Class B crimes in violation of 17-A M.R.S. § 401(C).  Count I alleges, in relevant part, that Dimott entered "a structure, namely a garage . . . located at 33 Hawkes Street." (Gov't Ex. 6 (ECF No. 79-6) at Page ID # 572.)  Count III alleges, in relevant part, that Dimott entered "a structure, namely a garage . . . located at 23 Haskell Street." (Gov't Ex. 6 at Page ID # 573.)

Dimott did not file a direct appeal of the sentence imposed on September 10, 2007.  His current estimated release date is March 13, 2017.

The pending petition is Dimott's first habeas petition.  Following the Supreme Court's decisions in Johnson v. United States, 135 S. Ct. 2551 (2015) (Johnson II) and Mathis v. United States, 136 S. Ct. 2243 (2016), Dimott now argues that he no longer has the three requisite convictions for an increased sentence under ACCA and should have faced a statutory maximum sentence of 120 months on the felon-in-possession charge.  Simply stated, he contends that Maine burglary no longer fits within the generic definition of burglary because Maine's locational element is overly broad in light of Mathis.

## II.   DISCUSSION

### A.  Dimott's Petition is Untimely under 28 U.S.C. § 2255(f).

Dimott's request for habeas relief invokes 28 U.S.C. § 2255(f)(3), which allows for an initial habeas petition to be filed within one year of a Supreme Court decision that "newly recognize[s]" an asserted right, provided that this newly recognized right is "made retroactively

applicable to cases on collateral review." 28 U.S.C. § 2255(f)(3). Johnson II is understood to be one such decision newly recognizing a right that is retroactively applicable because it "changed the substantive reach of the Armed Career Criminal Act" when it struck down ACCA's "residual clause" as void for vagueness. Welch v. United States, 136 S. Ct. 1257, 1265 (2016).

However, Dimott was deemed eligible for an ACCA sentence based only on burglary convictions, which qualify under ACCA's "enumerated clause." See 18 U.S.C. § 924(e)(2)(B)(ii) ("violent felony" for ACCA purposes includes "any crime punishable by imprisonment for a term exceeding one year . . . that . . . is burglary"). Because he was not sentenced pursuant to the now-invalidated residual clause, Johnson II and Welch simply do not provide grounds for relief under 28 U.S.C. § 2255(f)(3). See Johnson II, 135 S. Ct. at 2563 (explicitly noting that the decision "does not call into question application of [ACCA] to the four enumerated offenses"); see also Traxler v. United States, No. 1:16-cv-747, 2016 WL 4536329, at *5 (W.D. Mich. Aug. 31, 2016), appeal docketed, No. 16-2280 (6th Cir. Sept. 14, 2016) ("If Movant was sentenced under the enumerated-offenses clause, even improperly so, then Johnson's invalidation of the residual clause does not affect his sentence. And if Johnson does not affect Movant's sentence, then he has a statute of limitations problem, because he is not raising a claim based on a right that has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review.") (internal quotation marks omitted).

Dimott's reliance on Mathis is also misplaced. In contrast to Johnson II, Mathis has not been recognized as a case that announced a new substantive rule that is retroactively applicable to cases on collateral review. The Supreme Court made clear that it was not breaking new ground in Mathis:

> [T]he elements of Mathis's crime of conviction (Iowa burglary) cover a greater swath of conduct than the elements of the relevant ACCA offense (generic

4

> burglary). *Under our precedents, that undisputed disparity resolves this case. We have often held*, and in no uncertain terms, that a state crime cannot qualify as an ACCA predicate if its elements are broader than those of a listed generic offense.

Mathis, 136 S. Ct. at 2251 (emphasis added) (internal citation omitted). Furthermore, the Supreme Court noted that its "mantra" of "elements, not facts" had been "recently" reiterated in Descamps v. United States, 133 S. Ct. 2276 (2013). Mathis, 136 S. Ct. at 2251-52 (quoting Descamps, 133 S. Ct. at 2283). Notably, multiple courts have held that Descamps itself did not "newly recognize[] a constitutional right" and thus did not qualify for the application of 28 U.S.C. § 2255(f)(3). United States v. Murdock, No. 2:11-CR-08-DBH, 2015 WL 3775061, at *7 & n.11 (D. Me. June 17, 2015) (collecting cases). Because Mathis is an extension of Supreme Court precedent and simply applied Descamps to the state burglary statute then before the Supreme Court, a Mathis claim is not based on a constitutional right that "has been newly recognized by the Supreme Court." 28 U.S.C. § 2255(f)(3); see Dawkins v. United States, 829 F.3d 549, 551 (7th Cir. 2016) (per curiam) ("[O]nly new rules of constitutional law, made retroactive by the Supreme Court, can provide a basis for authorization [of a successive petition]. Mathis did not announce such a rule; it is a case of statutory interpretation.") (internal citation omitted). It follows that Mathis cannot be read as triggering a new one-year period for habeas relief under 28 U.S.C. § 2255(f)(3).

Thus, the Court concludes that neither Johnson II nor Mathis provides a basis for Dimott to obtain habeas relief.[1]

---

[1] The Court recognizes the argument that Dimott may have more vigorously contested the use of the burglary convictions at the time of his sentencing if the residual clause had not been available as a backstop. However, recognizing a basis for relief based on this type of speculation would risk enabling an end run around the principle of procedural default and the statutory time limits outlined in 28 U.S.C. § 2255(f)(3).

5

### B. Dimott's Burglary Convictions Remain ACCA-Qualifying Convictions under Existing Precedent.

Assuming the Court could undertake a timely review of Dimott's predicate burglary convictions, recent First Circuit precedent establishes that Maine burglary convictions are "violent felonies" pursuant to ACCA's enumerated clause.  In United States v. Duquette, the First Circuit held that "because Maine's burglary statute sets forth the definition of 'generic burglary' . . . a conviction under that statute qualifies as a 'violent felony' under the ACCA."  778 F.3d 314, 318 (1st Cir. 2015), cert. denied, 136 S. Ct. 262 (Oct. 5, 2015).  This is the "law of the circuit" and this Court is bound by it unless and until the First Circuit decides to revisit Duquette.  See Tosi v. United States, 2:16-cv-05-GZS, 2016 WL 5107078, at *3 & n.8 (D. Me. Sept. 20, 2016), appeal docketed, No. 16-2225 (1st Cir. Oct. 3, 2016).[2]

Although the First Circuit issued its decision in Duquette prior to the Supreme Court issuing its decisions in Johnson II and Mathis, the Supreme Court notably denied certiorari in Duquette only a few months prior to deciding to review the Eighth Circuit's decision in Mathis.  Compare Duquette, 778 F.3d 314 (1st Cir. 2015), cert. denied, 136 S. Ct. 262 (Oct. 5, 2015), with United States v. Mathis, 786 F.3d 1068 (8th Cir. 2015), cert. granted, 136 S. Ct. 894 (Jan. 19, 2016).  Given this timeline, the Court finds no basis for concluding that Mathis should be read as overruling Duquette.  Likewise, Mathis does not present the "extremely rare circumstance[]" where Duquette would no longer be binding precedent on this Court, nor does the Court read

---

[2] Pre-Mathis precedents from both the Supreme Court, see Taylor v. United States, 495 U.S. 575, 591 (1990), and the First Circuit, see, e.g., United States v. Bennett, 469 F.3d 46, 50 (1st Cir. 2006), establish that a statute goes beyond generic burglary if it includes locations that are not clearly "building[s] or other structure[s]," Taylor, 495 U.S. at 598. Thus, it is not apparent that Mathis should significantly affect the issue of whether Maine burglary qualifies as an ACCA predicate offense.

Mathis as announcing a new constitutional rule, as already explained above.  See United States v. Chhien, 266 F.3d 1, 11 (1st Cir. 2001).

With eight Maine burglary convictions, Dimott's criminal history, when viewed through the categorical approach, does uniquely tee up a question regarding the locational element for Maine Class C burglary.  Dimott argues that the definition of "structure" in the Maine burglary statute "takes Maine burglary convictions outside of generic burglary" and asserts that "Maine's definition of structure adds thousands of camper vans, camping trailers, motorized campers and other forms of camping vehicles as well as . . . any form of transportation (conveyance) which is adapted for overnight accommodation." (Pet.'s Mot. at 4.)  The applicable Maine statute provides that a person is guilty of Class C burglary if "[t]he person enters or surreptitiously remains in a structure knowing that that person is not licensed or privileged to do so, with the intent to commit a crime therein."[3]  17-A M.R.S. § 401(1)(A).  "Structure" is defined as "a building or other place designed to provide protection for persons or property against weather or intrusion, but does not include vehicles and other conveyances whose primary purpose is transportation of persons or property unless such vehicle or conveyance, or a section thereof, is also a dwelling place."  Id. § 2(24).  After the analysis undertaken by the majority in Mathis, it is understandable that Dimott questions whether Maine's inclusion of conveyances that are dwelling places (or other places that may only be designed to protect property against weather) as an alternative means of satisfying the locational element for Maine Class C burglary results in Maine's statute categorically reaching a broader range of places than generic burglary.  See Mathis, 136 S. Ct. at 2250 (holding that Iowa statute criminalizing burglary of "any building, structure . . . land, water or air vehicle" "reaches a

---

[3] It is a Class B offense to burglarize "a structure that is a dwelling place."  17-A M.R.S. § 401(1)(B)(4).  Thus, any burglary of a structure that is actually a conveyance adapted for overnight accommodations would necessarily be a Class B burglary.  See id. § 2(10), (24).

broader range of places" than generic burglary does). However, in the Court's assessment, Duquette currently provides a binding answer to that question within the First Circuit.

Therefore, even if the Court could undertake a timely review of Dimott's predicate burglary convictions, the Court would conclude that he was not entitled to habeas relief.

### III. CONCLUSION

For the reasons just explained, the Court hereby DENIES Dimott's Motion under 28 U.S.C. § 2255 (ECF No. 74).

However, in accordance with Rule 11 of the Rules Governing Section 2255 Cases and 28 U.S.C. § 2253(c), the Court hereby issues a certificate of appealability finding that Dimott's Petition contains a substantial showing of the denial of a constitutional right. Specifically, Dimott's Petition raises the following issues: (1) whether the retroactive application of Johnson II allows any petitioner serving an ACCA sentence to have his qualifying "violent felony" convictions re-examined even if those convictions appear to fall under the enumerated clause and, (2) if so, whether Dimott was unconstitutionally subjected to an increased sentence under ACCA based on Maine burglary convictions that do not qualify as generic burglaries given the locational element analysis found in Mathis.

SO ORDERED.

/s/ George Z. Singal
United States District Judge

Dated this 14th day of October, 2016.